Jonathan Francisco
C/O PO Box 3
Reamstown, Pennsylvania (17567)

**Date:** December 17, 2025

Via ECF (Electronic Document Submission)
**Clerk of Court**
United States District Court, Eastern District of Pennsylvania
James A. Byrne U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

Re: **Francisco v. Gary Kline of Domestic Relations Section, et al.**
Civil Action No. 5:25-cv-05775-JFL
**Submission of First Amended Verified Complaint (Fed. R. Civ. P. 15(a)(1))**

Dear Clerk:

Please accept for filing the enclosed **First Amended Verified Complaint** in the above-captioned matter. This amendment is submitted **as of right under Rule 15(a)(1)**. No defendant has been served, and no responsive pleading has been filed. Accordingly, leave of court is not required, and the amended complaint should supersede the original.

This amendment updates the party list. The previously named "Sheriff" defendant has been removed and replaced with the **Lancaster County Domestic Relations Section (DRS)**. The original summons is therefore no longer accurate.

Enclosed are **new summon forms** for the defendant listed in the First Amended Complaint. I respectfully request that the Clerk:

1. **Issue the corrected summon** for all current defendants; and
2. **Issue them expeditiously**, so service may proceed under Rule 4(c).

Please also note that Plaintiff **demands a trial by jury**, which should be reflected on the docket.

Please advise if the Court requires anything further.

Thank you for your assistance.

Respectfully submitted,

**Jonathan Francisco**
Plaintiff, Pro Per

United States District Court
Eastern District of Pennsylvania
Civil Action

| | |
|---|---|
| JONATHAN FRANCISCO, <br> Plaintiff, One of the People <br><br> V. <br><br> **1.Director Gary Kline** of the Lancaster County Domestic Relations Section (**"DRS"**), <br> in his official capacity; <br> **2.Domestic Relation Section** <br> of Lancaster County; <br> **3.County of Lancaster, Pennsylvania;** <br> **4.Officer Shane Johnson,** <br> in his individual capacity <br> Defendants | Docket No. 5:25-CV-05775-JFL <br><br> First Amended Verified Complaint <br><br> As Applied Declaratory, Injunctive, <br><br> Restitutionary and Damages Relief <br><br> 42 U.S.C. § 1983, 1994; & <br><br> 28 U.S.C. §§ 2201-2202, 1331 & 1343 <br><br> **Jury Trial Demanded** |

FIRST AMENDED VERIFIED COMPLAINT
(42 U.S.C. § 1983 & 1994; 28 U.S.C. §§ 1331, 1343, 2201–2202)
AS-APPLIED DECLARATORY, INJUNCTIVE, RESTITUTIONARY AND DAMAGES
RELIEF

Plaintiff, Jonathan Francisco, for his First Amended Verified Complaint against Defendants, alleges as follows:

## I. INTRODUCTION

This civil-rights action arises from the **as-applied enforcement of Title IV-D child-support procedures** by the Lancaster County Domestic Relations Section ("Lancaster DRS"). Plaintiff does not dispute his fundamental responsibility to support and care for his daughter. He challenges the **procedures and enforcement mechanisms** used against him, which included: **no proper service of process, no verified complaint, no judicial hearing prior to arrest, warrantless and coercive "pay-or-jail" enforcement, imputed income calculations with no evidentiary basis, ongoing contempt proceedings without trial or disclosure, and the exercise of quasi-judicial power by officials who never took the required oath of office.**

From the initiation of the support action on **April 21, 2023**, Plaintiff was never provided the procedural protections required by the United States Constitution and the Pennsylvania Constitution. He received **no summons, no verified complaint**, and **no explanation of the**

**nature and cause of the proceedings** as required by **Article I §§ 9 and 11 of the Pennsylvania Constitution** and basic due-process principles. Despite this, on **May 11, 2024**, Plaintiff was arrested at his provide dwelling without a prior judicial hearing and was jailed for roughly **50 hours** before any appearance before a neutral judicial officer. The case is therefore constitutionally defective from its inception—a **fruit of the poisonous tree**—and any orders or enforcement actions arising from it are **void ab initio**.

Lancaster DRS operates as Pennsylvania's local Title IV-D enforcement arm, within a federal–state cooperative framework that requires a single and separate IV-D agency, written cooperative agreements with courts and law enforcement, and expedited procedures that still protect due-process rights. See, e.g., **42 U.S.C. § 654**; **45 C.F.R. §§ 302.12, 302.34, 303.6, 303.101**; **23 Pa.C.S. §§ 4305(d), 4372–4373**; **42 Pa.C.S. § 961**; **Pa.R.C.P. 1910**. Even in "expedited" processes, federal regulations expressly require that **"due-process rights of the parties must be protected."** 45 C.F.R. § 303.101(c)(2).

Plaintiff alleges that the **County of Lancaster**, acting through its Domestic Relations Section (Lancaster DRS), Director **Gary Kline**, and police officer Shane Johnson who became involved at the request or direction of Lancaster DRS **Gary Kline** became involved in enforcement actions against Plaintiff in a manner that:

- violated **procedural due process** by denying notice, service, hearings, and ability-to-pay findings before incarceration;
- resulted in an **unreasonable seizure and detention** contrary to the **Fourth Amendment** and **Article I § 8** of the Pennsylvania Constitution, including detention in excess of the **48-hour rule** set forth in **Gerstein v. Pugh** and **County of Riverside v. McLaughlin**;
- created a de facto **debtors' prison** and **peonage regime** prohibited by the **Thirteenth Amendment** and **42 U.S.C. § 1994**;
- denied Plaintiff **meaningful access to a court of record** and substituted non-judicial actors for judges, in tension with the separation-of-powers concerns highlighted in **Holmberg v. Holmberg, 588 N.W.2d 720 (Minn. 1999)**;

- burdened Plaintiff's **First Amendment free-exercise and parental rights**, including his right to fulfill his responsibilities as a father in accordance with his religious convictions; and

- were structurally biased by **federal incentive payments** under **42 U.S.C. § 658a** and related state pass-throughs under **23 Pa.C.S. § 4373(c)**, giving Lancaster DRS a direct financial interest in maximizing collections and penalty-type outcomes, contrary to neutrality requirements in cases such as **Marshall v. Jerrico, Inc., 446 U.S. 238 (1980)**, **Tumey v. Ohio**, **Ward v. Monroeville**, and **Caperton v. A.T. Massey**.

Plaintiff further expresses that **Lancaster DRS clerks, conference officers, and other administrative personnel** exercised de facto judicial authority—making determinations, issuing directives, advancing enforcement recommendations, and shaping contempt proceedings—despite lacking the **oath of office** mandated by **U.S. Constitution Article VI, Clause 3, 5 U.S.C. § 3331, Pennsylvania Constitution Article VI § 3**, and **65 Pa.C.S. § 71** and related oath/ethics provisions. Plaintiff directly asked several such officials whether they had taken an oath of office, and they confirmed they had not. Their participation in enforcing penalty-type consequences without proper oaths or lawful delegation of judicial authority further renders the proceedings **ultra vires** and void as applied to him.

Title IV-D is a funding and enforcement mechanism, not a private contract with obligors. Plaintiff never applied for IV-D services, never consented to any services contract, and never retained Lancaster DRS to act as his agent. Nonetheless, DRS treated him as a subject of the IV-D apparatus based on cooperative agreements among government entities, without his consent or privity. Plaintiff alleges that this framework was implemented in his case in a way that converted his alleged civil debt into a system of coerced labor and payment under threat of incarceration, contrary to **42 U.S.C. § 1994** and equitable principles.

Plaintiff seeks **declaratory relief** that these as-applied enforcement practices are unconstitutional and void, **injunctive relief** prohibiting their continued use against him, **restitution** of monies collected through these unconstitutional means, and **damages** for the harms he has suffered.

## II. JURISDICTION AND VENUE

1. This Court has federal-question jurisdiction under **28 U.S.C. § 1331** because Plaintiff's claims arise under the Constitution and laws of the United States, including **42 U.S.C. § 1983 and 1994.**

2. This Court also has jurisdiction under **28 U.S.C. § 1343(a)(3)–(4)** because this action seeks to redress the deprivation, under color of state law, of rights secured by the Constitution and laws of the United States.

3. Plaintiff seeks declaratory relief under **28 U.S.C. §§ 2201–2202**.

4. This Court has supplemental jurisdiction over related state-law and state-constitutional claims under **28 U.S.C. § 1367(a)** because they arise from the same nucleus of operative facts. Plaintiff does not ask this Court to sit in direct review of, or to exercise appellate jurisdiction over, any final state-court judgment; instead, he brings an **as-applied constitutional challenge** to Defendants' procedures and ongoing enforcement practices. Accordingly, this action is not barred by the **Rooker–Feldman** doctrine or by **Younger** or related abstention principles.

5. Venue is proper in this District under **28 U.S.C. § 1391(b)** because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendants reside and/or perform their official functions here.

## III. PARTIES

6. **Plaintiff Jonathan Francisco** is a natural man, domiciled near Lancaster, Pennsylvania, and the father of the offspring referenced in the underlying support proceedings. He is proceeding **pro per**.

7. **Defendant Lancaster County Domestic Relations Section (Lancaster DRS)** is the county-level unit responsible for administering and enforcing child-support obligations under Title IV-D in Lancaster County, including Docket No. **2023-00674**, PACSES No. **548302071**. It functions pursuant to Pennsylvania's federally approved IV-D state plan and operates as a department, arm, or component of the **County of Lancaster**.

8. **Defendant County of Lancaster** is a Pennsylvania county and municipal corporation responsible for establishing, funding, supervising, and maintaining the policies, customs, practices, training, and oversight of Lancaster County Domestic Relations Section and related enforcement mechanisms. At all relevant times, Lancaster DRS, its Director, and

associated personnel acted as policymakers, agents, or employees of the County of Lancaster for purposes of liability under 42 U.S.C. § 1983 and related law.

9. **Defendant Gary Kline** is, and at all relevant times was, the Director/Administrator of Lancaster DRS, with supervisory and policymaking authority over DRS enforcement practices challenged in this Complaint. He is sued in his **official capacity** for declaratory and injunctive relief and in his **individual capacity** for damages.

10. **Defendant Shane Johnson** is, and at all relevant times was, a police officer who became involved at the request or direction of Lancaster DRS involved in locating Plaintiff, causing or executing his arrest, and participating in enforcement efforts tied to Docket No. 2023-00674. He is sued in his **official capacity** for declaratory and injunctive relief and in his **individual capacity** for damages.

11. At all relevant times, each Defendant acted under color of the statutes, ordinances, regulations, customs, or usage of the Commonwealth of Pennsylvania and Lancaster, and within the scope of their official duties or apparent authority.

## IV. LEGAL FRAMEWORK (FEDERAL AND PENNSYLVANIA)

12. **Title IV-D structure and cooperative arrangements.** Title IV-D requires states to operate a single and separate IV-D agency under a federally approved state plan and to enter written cooperative arrangements with courts and law-enforcement authorities. See **42 U.S.C. § 654**; **45 C.F.R. §§ 302.12, 302.34**. Pennsylvania implements Title IV-D through, inter alia, **23 Pa.C.S. §§ 4372–4373**, which designate and empower the IV-D unit and authorize cooperative arrangements with county domestic relations sections, courts, and law enforcement.

13. **Expedited process must still protect due process.** Even in expedited IV-D procedures, federal regulations require that the **"due-process rights of the parties must be protected."** 45 C.F.R. § 303.101(c)(2). Additional federal guidance, including **45 C.F.R. § 303.6**, incorporates post–**Turner v. Rogers, 564 U.S. 431 (2011)** safeguards for enforcement when incarceration is at stake. In Pennsylvania, DRS operates within the judicial system and must comply with due-process and review procedures, including those in **42 Pa.C.S. § 961, Pa.R.C.P. 1910,** and **23 Pa.C.S. § 4305(d)**.

14. **Contempt and liberty protections.** Before a person may be incarcerated for civil contempt in a child-support matter, **Turner v. Rogers** and related precedents require: (1) clear notice that **ability to pay** is the critical issue, (2) a meaningful opportunity to present financial information, (3) an opportunity to respond to opposing evidence, and (4) an express finding of present ability to pay before any incarceration.

15. **Penalty-type consequences and adjudication.** When the government seeks civil-penalty-type consequences akin to traditional punitive remedies, adjudication must provide constitutionally sufficient procedural protections, including use of an Article III court and, when applicable, a jury. See **SEC v. Jarkesy, 144 S. Ct. 2117 (2024)**. Pennsylvania constitutional anchors include **Pa. Const. art. I § 6** (right to jury trial) and **§ 11** (open courts and due course of law).

16. **Institutional pecuniary bias.** Federal IV-D law provides **incentive payments** tied to performance measures such as collections. See **42 U.S.C. § 658a**. Pennsylvania law authorizes incentive pass-throughs to political subdivisions. See **23 Pa.C.S. § 4373(c)**. Due process is violated when a decisionmaker or institution has a direct, personal, or substantial pecuniary interest in the outcome of its decisions. See, e.g., **Tumey v. Ohio**, **Ward v. Monroeville**, **Caperton v. A.T. Massey Coal Co.**, and **Marshall v. Jerrico, Inc.**

17. **Warrantless seizure and the 48-hour rule.** A neutral judicial probable-cause determination must promptly follow a warrantless arrest; detention beyond approximately **48 hours** without such a determination is presumptively unconstitutional. See **Gerstein v. Pugh, 420 U.S. 103 (1975)**; **County of Riverside v. McLaughlin, 500 U.S. 44 (1991)**.

18. **Void judgments and coram non judice.** Acts by a forum lacking constitutional warrant to impose penalties are **coram non judice** and void as applied. Under classic principles articulated in **Pennoyer v. Neff, 95 U.S. 714 (1878)**, a court cannot exercise personal jurisdiction over a defendant without valid service of process or consent, and orders entered without such jurisdiction are void. Plaintiff relies on the persuasive reasoning in **Holmberg v. Holmberg, 588 N.W.2d 720 (Minn. 1999)**, where an expedited IV-D process that effectively usurped judicial power violated separation of powers.

19. **Anti-peonage protections.** The Thirteenth Amendment and **42 U.S.C. § 1994** abolish peonage and involuntary servitude, outside punishment for crime duly adjudicated. These

provisions underscore limits on coercing labor or payment of debt without lawful adjudication and adequate procedural protections.

20. **Contract and consent context.** Title IV-D operates through state plans and intergovernmental **cooperative agreements**, not private contracts with individual obligors. Plaintiff alleges no assent or privity to any services contract with Lancaster DRS. See, e.g., 45 C.F.R. § 302.33 (regarding IV-D services); cf. **Kent v. N.Y. Cent. R.R. Co., 12 N.Y. 628** (persuasive authority on limits of implied contract).

21. **Pennsylvania constitutional anchors.** The Pennsylvania Constitution guarantees inherent and indefeasible rights, including those set forth in **Article I § 1** (inherent rights), **§ 6** (jury), and **§ 11** (open courts and due course of law), among others.

22. **Program purpose and individual rights.** Courts have noted that Title IV-D focuses on state plan compliance and system performance, not on creating privately enforceable individual "best interests" entitlements. See **Blessing v. Freestone, 520 U.S. 329, 343–45 (1997); Wehunt v. Ledbetter, 875 F.2d 1558, 1565–66 (11th Cir. 1989); Tongol v. Usery, 601 F.2d 1091, 1097–98 (9th Cir. 1979)**; see also **United States v. Faasse, 265 F.3d 475, 479–85 (6th Cir. 2001) (en banc)**. Plaintiff does not assert a freestanding private right to enforce Title IV-D provisions themselves; instead, he relies on the Title IV-D framework as **context** for his constitutional claims. The rights he seeks to vindicate here arise from the United States Constitution, **42 U.S.C. § 1994**, and the Pennsylvania Constitution, and are enforceable under **42 U.S.C. § 1983**. Consistent with the equitable maxim that **equity will not suffer a wrong without a remedy**, Plaintiff invokes this Court's equitable and declaratory powers to redress concrete constitutional injuries caused by Defendants' as-applied enforcement practices.

23. **Limits on compelled disclosures.** Government compulsion to produce or disclose information is constrained by the Fourth and Fifth Amendments. Compelled production must be reasonable in scope and not oppressive, and the privilege against self-incrimination is personal. See **Hale v. Henkel, 201 U.S. 43, 76–77 (1906)**.

## V. FACTUAL ALLEGATIONS

**A. Initiation of the Lancaster DRS Case (April 21, 2023)**

24. On or about **April 21, 2023**, Lancaster DRS initiated a child-support case against Plaintiff under Docket No. **2023-00674**, PACSES No. **548302071**.

25. Plaintiff was **never served** with a summons or a verified complaint initiating this action, even though Pennsylvania procedural rules require service of original process and support pleadings in accordance with **Pa.R.C.P. 400 et seq.**, **Pa.R.C.P. 1910.4**, and related provisions (including rules governing service in domestic-relations and support matters). No judicial officer conducted an initial hearing at case opening, and all activity was handled administratively by DRS staff rather than through a court of record.

26. Plaintiff did not receive written notice explaining the legal basis, the nature and cause of the proceedings, or the specific obligations alleged, in violation of due-process requirements and **Article I §§ 9 and 11** of the Pennsylvania Constitution, and despite Pennsylvania rules requiring that a complaint or petition state the claim, the relief sought, and the grounds for relief so that a defendant can understand and respond to the allegations.

27. Plaintiff did not appear at any in-person conference or hearing before his arrest; all communications with Lancaster DRS occurred by telephone.

28. During those calls, Plaintiff repeatedly asked DRS personnel to identify: a. the specific **law** or statutory basis creating an enforceable obligation against him; b. any **contract, agreement, or application** by which he allegedly consented to IV-D services; and c. any **injured party** or factual basis justifying the asserted obligation.

29. Lancaster DRS did not provide a verified complaint, sworn affidavit, underlying contract, or any documentation establishing jurisdiction or lawful authority to proceed. Instead, the matter moved forward under internal DRS processes and Title IV-D classifications.

30. Plaintiff did not submit financial statements, pay stubs, or other income documents to Lancaster DRS because he was still disputing the legal basis and jurisdiction of the proceedings.

31. Despite the lack of financial documentation, Lancaster DRS **imputed income** to Plaintiff, assigning him support obligations based on estimates rather than evidence. No findings were made as to his actual ability to pay.

32. DRS never made or documented a determination as to whether Plaintiff was a **custodial or noncustodial parent**, or whether the child was receiving benefits that would justify treatment of the case as a Title IV-D matter.

33. Plaintiff never applied for IV-D services, never signed a services contract, and never granted DRS any power of attorney or authority to act as his personal representative. Nor, on information and belief, did DRS possess any power of attorney or written authorization from the child's mother or the child to file petitions or pleadings "on behalf of" the mother in an individual capacity (such as contempt petitions against Plaintiff). Enforcement proceeded through state plans and cooperative agreements among public entities, not through any consensual contract with Plaintiff or duly executed power of attorney from either parent, and Plaintiff alleges that DRS's filing of pleadings purporting to act "on behalf of" the mother constitutes unauthorized practice of law by non-attorney governmental personnel.

34. Plaintiff sent written notices disputing any presumed contract or agency relationship, including a letter of rescission and written demands for proof of authority and subject-matter jurisdiction. These notices were ignored or denied without a hearing.

35. Plaintiff also submitted written requests for discovery and documents establishing the legal basis, jurisdiction, and authority for enforcement against him. Those requests were not answered with competent proof.

36. DRS filed pleadings styled as acting "on behalf of" the other parent, even though Plaintiff had never retained DRS as counsel or consented to representation. On information and belief, DRS was simultaneously functioning as both an **administrator** of Title IV-D processes and a **de facto legal representative**, despite lacking any lawful authority, contract, or power of attorney to act in such a representative capacity. Its actions reflected governmental enforcement under Title IV-D rather than legitimate private counsel representation.

37. Without Plaintiff's consent, the other parent supplied identifying information to DRS. DRS then searched for and associated a Social Security number (SSN) with Plaintiff in government records and used that association to subject him to IV-D enforcement, despite his disputes regarding consent and qualification for IV-D services. Plaintiff alleges that the SSN is issued by the Social Security Administration and remains its

property; that using the SSN as the basis to create or enforce obligations against him without his informed, written consent amounts to an unauthorized taking and use of his identity and of a number that is not his property; and that such use creates an undisclosed "joinder" between him and government accounts. Plaintiff further alleges that he never personally completed or signed any application for a Social Security number and therefore cannot lawfully be presumed to have consented to have that number used as a basis for debt enforcement against him.

38. DRS did not provide the disclosure required by **Section 7 of the Privacy Act of 1974 (Pub. L. 93-579 § 7)** concerning the legal authority for SSN collection, whether disclosure was mandatory or voluntary, the intended uses of the SSN, and the consequences of refusal.

## B. Warrantless Arrest at Plaintiff's Home (May 11, 2024)

39. On **May 11, 2024**, Plaintiff was performing landscaping at his private dwelling.

40. Defendant **Shane Johnson** drove by, observed Plaintiff at his private property, and entered onto the property to confront him.

41. Upon approach, Officer Johnson immediately sought to arrest Plaintiff.

42. Plaintiff asked to see a **warrant** multiple times. No warrant was produced in response.

43. Plaintiff requested "civilian due process" and clarification of the legal basis for the arrest, but Officer Johnson did not articulate facts establishing probable cause or lawful grounds to detain Plaintiff.

44. Prominent **"No Trespassing"** signs were posted at both the front and back doors of Plaintiff's home. Despite these posted notices and without consent, Officer Johnson entered and remained on the property.

45. Officer Johnson arrested and detained Plaintiff and transported him to the **Ephrata Police Department** for identification attempts using in-house computer systems, all without a warrant or probable cause supported by oath or affirmation.

46. At no time before or during transport or custodial interrogation did Officer Johnson advise Plaintiff of his rights under **Miranda**.

47. Plaintiff was booked and fingerprinted without his consent.

48. Officer Johnson then caused Plaintiff to be transported to **Lancaster County Prison**. During booking at the prison, staff stated or implied that Plaintiff would be forcibly stripped or otherwise punished if he refused to provide a Social Security number or other personal information, further coercing compliance and causing dignitary and emotional harm.

49. Officer Johnson remained present and refused to leave until Plaintiff complied, contributing to the coercive atmosphere.

50. Plaintiff remained jailed for approximately **50 hours** before any appearance or neutral judicial probable-cause determination. This detention exceeded the 48-hour benchmark recognized in **Gerstein** and **County of Riverside**, making the confinement presumptively unconstitutional.

51. Plaintiff's confinement spanned **Mother's Day weekend (May 12, 2024)**, depriving him of time with family and causing emotional distress, loss of familial association, anxiety, humiliation, and sleep disturbance. The arrest and jail stay also harmed his reputation among family and neighbors and made it more difficult to pay essential bills and obligations.

## C. Post-Release Enforcement, Coercive "Pay or Jail" Practices, and Contempt

52. After his release, Plaintiff was repeatedly routed into expedited Title IV-D enforcement and contempt proceedings where jail, license suspension, and significant monetary exactions were threatened.

53. Lancaster DRS and associated authorities consistently communicated a **"pay or jail"** message to Plaintiff, demanding payments without first determining his present ability to pay.

54. In proceedings where incarceration or coercive sanctions were at issue, Plaintiff was never afforded the safeguards required by **Turner v. Rogers** and **Bearden v. Georgia**, including: a. clear notice that ability to pay was the critical issue; b. a meaningful opportunity and mechanism to present financial information; c. an opportunity to respond to opposing evidence; and d. an express finding of present ability to pay before any coercive sanction.

55. Because Plaintiff lacked the financial means to satisfy the coerced payment demands, and because of the imminent threats of incarceration, third parties - identified by Plaintiff as the testatrix and testator - made payments on Plaintiff's behalf solely to prevent his being jailed. These payments were not voluntary but were compelled by Defendants' "pay or jail" practices, and they diverted resources away from Plaintiff's household and offspring, resulting in Defendants' unjust enrichment through coercive and unconstitutional enforcement methods.

56. Plaintiff couldn't make additional payments himself so his testator did under duress, in fear of renewed confinement, suspension of licenses, and other enforcement actions, rather than as voluntary, informed choices.

57. These practices caused concrete harms: the threat and reality of confinement, coerced payments, increased difficulty paying basic necessities (housing, utilities, food), and ongoing emotional and economic stress.

58. On information and belief, the enforcement forum in Plaintiff's case receives or is materially affected by federal IV-D incentive funding and Pennsylvania pass-throughs tied to performance metrics such as collections. This creates an institutional pecuniary interest in maximizing collections and penalty-type outcomes.

59. Enforcement actions have suspended or threatened to suspend Plaintiff's driver's license, impairing his ability to work and travel for any employment. Related traffic citations culminated in suspension without meaningful due process, further entangling Plaintiff in state enforcement mechanisms.

60. Authorities have placed a lien or levy on Plaintiff's bank account, impeding his ability to pay essential bills and depriving him of the use of funds for his own offspring.

61. Absent judicial intervention, Defendants will continue to employ the expedited IV-D apparatus to impose or coerce penalty-type consequences against Plaintiff without constitutionally required adjudication, including the possibility of future holds exceeding 48 hours.

62. Plaintiff faces imminent irreparable harm. A contempt/enforcement hearing is currently scheduled for **December 22, 2025**, at which Plaintiff reasonably fears that the same unconstitutional procedures will again be used to threaten his liberty and property unless enjoined.

**D. Lack of Oath of Office and Ultra Vires Exercise of Judicial Functions**

63. On information and belief, **Lancaster DRS clerks, conference officers, and other administrative personnel** have not taken or filed the **oath of office** required by **U.S. Constitution Article VI, Clause 3**, **5 U.S.C. § 3331**, **Pennsylvania Constitution Article VI § 3**, and related Pennsylvania statutes, including **65 Pa.C.S. § 71**.

64. Plaintiff personally asked multiple clerks and conference officers whether they had taken an oath of office. Each stated that he or she had not.

65. Despite lacking these required oaths and without any written delegation of judicial authority, DRS clerks and conference officers exercised functions resembling judicial power, including: a. making support and enforcement recommendations; b. controlling the scheduling and scope of contempt and enforcement proceedings; c. influencing or initiating warrants and other coercive measures; and d. shaping the conditions under which Plaintiff could access a judge or court of record.

66. Plaintiff alleges that this ultra vires exercise of authority by officials who never took the required oath further undermines the lawfulness of the proceedings against him and contributes to the conclusion that the resulting orders and enforcement actions are **coram non judice** and void as applied.

**VI. CLAIMS FOR RELIEF**

**COUNT I – PROCEDURAL DUE PROCESS (FEDERAL AND PENNSYLVANIA)**
(42 U.S.C. § 1983; U.S. Const. amend. XIV; Pa. Const. art. I §§ 1, 9, 11)

67. Plaintiff realleges and incorporates by reference paragraphs 1–66.

68. Plaintiff has protected liberty interests (including freedom from physical restraint and incarceration) and property interests (including wages, bank funds, and the ability to support his family) protected by the Fourteenth Amendment and **Article I §§ 1, 9, and 11** of the Pennsylvania Constitution.

69. Defendants deprived Plaintiff of these interests by arresting and jailing him, subjecting him to ongoing contempt and enforcement proceedings, and taking or coercing money and property from him.

70. These deprivations occurred without **constitutionally adequate procedures**, including: a. failure to serve a summons or provide a verified complaint or comparable pleading

establishing the nature and cause of the action; b. failure to provide timely, clear notice that ability to pay would be the central issue in any contempt or incarceration proceeding; c. failure to provide a meaningful opportunity and mechanism for Plaintiff to present financial information and challenge imputed income figures; d. failure to conduct a full and fair hearing before a neutral decisionmaker before issuing or enforcing coercive orders, e. failure to make express findings of present ability to pay before jailing or threatening to jail Plaintiff, contrary to **Turner v. Rogers** and **Bearden v. Georgia**; f. channeling Plaintiff into non-judicial or quasi-judicial processes controlled by administrative personnel who lacked proper oaths and lawful authority; and g. failing to provide prompt judicial review of his warrantless arrest within approximately 48 hours, as required by **Gerstein** and **County of Riverside**.

71. Defendants Lancaster DRS and Director Kline established and enforced policies and practices that caused these procedural deficiencies, while Officer Johnson personally participated in the warrantless arrest and contributed to Plaintiff's prolonged detention and coerced disclosures.

72. As a direct and proximate result, Plaintiff suffered loss of liberty, emotional distress, economic harm, damage to reputation, and other injuries.

73. The violations described in this Count render the orders and enforcement actions taken against Plaintiff **void as applied**, and they support an award of compensatory damages against Defendants in their individual capacities, as well as declaratory and injunctive relief against them in their official capacities.

## COUNT II – UNREASONABLE SEIZURE AND DETENTION
(42 U.S.C. § 1983; U.S. Const. amend. IV; Pa. Const. art. I § 8)

74. Plaintiff realleges and incorporates by reference paragraphs 1–73.

75. The Fourth Amendment and **Article I § 8** of the Pennsylvania Constitution protect individuals from unreasonable seizures and warrantless intrusions into his property.

76. On May 11, 2024, Officer Johnson entered Plaintiff's property despite clearly posted "No Trespassing" signs, arrested Plaintiff without a warrant, and transported him for identification and confinement without articulating probable cause supported by oath or affirmation.

77. Plaintiff repeatedly requested to see a warrant, but none was produced. No neutral judicial officer had issued a valid warrant based on probable cause regarding Plaintiff's alleged willful nonpayment or other offense.

78. After the arrest, Plaintiff was detained for approximately 50 hours without a neutral judicial probable-cause determination, exceeding the presumptive 48-hour limit recognized in **County of Riverside v. McLaughlin**.

79. These actions constituted an unreasonable seizure and detention under the Fourth Amendment and Article I § 8.

80. Officer Johnson is directly liable in his individual capacity for this unconstitutional seizure and detention. Lancaster DRS and Director Kline are liable to the extent that their policies, customs, or directives caused or authorized the use of DRS-initiated warrants and warrantless seizures as debt-collection tools without adequate judicial oversight.

81. As a direct and proximate result, Plaintiff suffered loss of liberty, emotional and psychological harm, reputational damage, and associated economic losses.

## COUNT III – PEONAGE AND INVOLUNTARY SERVITUDE
(42 U.S.C. §§ 1983, 1994; U.S. Const. amend. XIII)

82. Plaintiff realleges and incorporates by reference paragraphs 1–81.

83. The Thirteenth Amendment and **42 U.S.C. § 1994** prohibit peonage and involuntary servitude, except as punishment for crime after lawful conviction.

84. Plaintiff's alleged obligations arise from a civil support matter, not a criminal conviction. Nevertheless, Defendants used threats of incarceration and actual confinement to compel payment of alleged arrears and ongoing support without affording the required procedural protections.

85. Plaintiff was repeatedly confronted with a coercive "pay or jail" choice, and, because he lacked the financial means to comply, third parties identified as the testatrix and testator paid on his behalf solely to prevent his incarceration. These payments were not voluntary; they were made under the imminent threat that Plaintiff would be jailed if they did not occur.

86. Defendants thereby diverted resources away from Plaintiff's household and offspring and obtained money through coercive and unconstitutional enforcement practices, resulting in

Defendants' unjust enrichment while Plaintiff and his family bore the burdens of a debt-based servitude regime.

87. By conditioning Plaintiff's liberty and ability to avoid jail on coerced payments from himself and his family, Defendants effectively converted a civil obligation into a system of **debt servitude and peonage**, in which Plaintiff's freedom was tied to his ability, or his family's ability, to satisfy payment demands.

88. Defendants' conduct thus created an impermissible condition of peonage and involuntary servitude under color of state law, in violation of the Thirteenth Amendment and **42 U.S.C. § 1994**. As a direct and proximate result, Plaintiff suffered economic losses, loss of liberty, emotional distress, and other harms.

**COUNT IV – DENIAL OF ACCESS TO A COURT OF RECORD AND ULTRA VIRES EXERCISE OF JUDICIAL POWER**
(42 U.S.C. § 1983; U.S. Const. amend. XIV; Pa. Const. art. I §§ 11, 25; Pa. Const. art. VI § 3)

89. Plaintiff realleges and incorporates by reference paragraphs 1–88.

90. Plaintiff has a right to meaningful access to a court of record presided over by a neutral judicial officer when the government seeks to deprive him of liberty or property.

91. Rather than promptly bringing Plaintiff before a judge to adjudicate jurisdiction, ability to pay, and the lawfulness of enforcement actions, Defendants channeled him into expedited IV-D processes dominated by clerks, conference officers, and administrative personnel who had never taken the required oath of office.

92. These non-judicial actors made or substantially influenced decisions about support amounts, enforcement mechanisms, and contempt, even though they lacked lawful judicial authority under **Pennsylvania Constitution Article VI § 3** and related statutes.

93. As in **Holmberg v. Holmberg**, where an expedited IV-D process was found to violate separation of powers by displacing the district court's role, the enforcement structure applied to Plaintiff substituted administrative process for meaningful judicial adjudication.

94. As a result, Plaintiff was denied a meaningful opportunity to: a. challenge the court's jurisdiction and the validity of the underlying orders; b. obtain a full hearing on ability to pay and other defenses; c. have a record created in a court of record for appellate review; and d. secure timely judicial consideration of his constitutional claims.

95. This denial of meaningful access to a court of record and the ultra vires exercise of judicial functions by oathless officials violated Plaintiff's rights under the Due Process Clause, **Article I §§ 11 and 25** of the Pennsylvania Constitution, and the structural requirements of **Article VI § 3**.

96. Plaintiff suffered concrete injury as a result, including prolonged exposure to invalid orders, inability to promptly correct unconstitutional enforcement, and ongoing risk of contempt and incarceration.

**COUNT V – FIRST AMENDMENT AND PARALLEL PENNSYLVANIA RIGHTS (FREE EXERCISE, PARENTAL RIGHTS, AND PRIVATE CAPACITY)**
(42 U.S.C. § 1983; U.S. Const. amend. I; Pa. Const. art. I §§ 3, 7)

97. Plaintiff realleges and incorporates by reference paragraphs 1–96.

98. Plaintiff is a Christian father who believes that his daughter is a gift from God and that he has a spiritual duty to support and raise her in accordance with his faith. Scripture teaches that "children are a heritage from the LORD" (**Psalm 127:3–5**), that unjust decrees which rob the poor are condemned (**Isaiah 10:1–2**), and that no one can serve two masters (**Matthew 6:24**). Plaintiff understands his responsibility in a **private capacity**, under God, rather than as an instrument of a coercive debt-based system.

99. Plaintiff's sincerely held beliefs include: (a) that he must not become a slave to man-made systems of debt and peonage, in light of admonitions such as **1 Corinthians 7:23** ("you were bought at a price; do not become slaves of human beings") and **Romans 6:14** ("sin shall no longer be your master"); (b) that he must support his family in a manner consistent with biblical principles; and (c) that civil authorities should not employ unjust measures that oppress the poor or coerce labor.

100. By imposing and enforcing a coercive "pay or jail" regime, using confinement and threats of confinement as leverage, and diverting resources away from Plaintiff's household through unlawful enforcement, Defendants substantially burdened Plaintiff's ability to live out his faith and parental responsibilities.

101. While child-support statutes are facially neutral, Plaintiff challenges the **as-applied** enforcement methods used in his case, which combined defective process, institutional pecuniary bias, and peonage-like practices that interfered with his religious exercise and parental role.

102. Defendants' actions were not the least restrictive means of furthering a compelling governmental interest and were not narrowly tailored to any legitimate objective, given the availability of lawful, constitutional procedures for establishing and enforcing support.

103. These actions violated Plaintiff's rights under the **First Amendment** and parallel protections in **Pennsylvania Constitution Article I §§ 3 and 7**.

104. As a direct and proximate result, Plaintiff suffered emotional, spiritual, and economic harm.

## COUNT VI – DECLARATORY AND INJUNCTIVE RELIEF; RESTITUTION
(42 U.S.C. § 1983; 42 U.S.C. § 1994; 28 U.S.C. §§ 2201–2202)

105. Plaintiff realleges and incorporates by reference paragraphs 1 - 104.

106. An actual, ongoing controversy exists between Plaintiff and Defendants regarding the constitutionality, as applied to him, of the Title IV-D enforcement practices and related procedures described in this Complaint.

107. Plaintiff seeks a **declaratory judgment** that these as-applied practices - lack of proper service, lack of hearings and ability-to-pay determinations, warrantless home arrest and extended detention, use of coercive "pay or jail" enforcement, institutional pecuniary bias, and ultra vires exercise of judicial power by oathless officials - violate the United States Constitution, **42 U.S.C. § 1994**, and the Pennsylvania Constitution, and that the resulting orders and enforcement actions are **void as applied** to him.

108. Plaintiff further seeks **prospective injunctive relief** prohibiting Defendants, in their official capacities, from continuing to enforce child-support obligations against him using these unconstitutional methods, unless and until they comply fully with constitutional requirements.

109. Plaintiff also seeks **restitution** of all money taken from him (or paid on his behalf by third parties under coercion) through the unconstitutional enforcement practices described herein, as well as compensatory damages in an amount to be determined at trial. Consistent with the maxims that **equity regards as done that which ought to be done** and that **equity abhors a forfeiture**, Plaintiff asks this Court, sitting in equity as well as law, to restore him to the position he would have occupied had Defendants not acted unconstitutionally.

**COUNT VII – PENNSYLVANIA CONSTITUTIONAL VIOLATIONS**
(Pa. Const. art. I §§ 1, 2, 3, 7, 8, 9, 11, 25; art. VI § 3)

110. Plaintiff realleges and incorporates by reference paragraphs 1–109.

111. Independently of federal law, the Pennsylvania Constitution protects Plaintiff's inherent rights, liberty, property, religious exercise, freedom of speech, freedom from unreasonable searches and seizures, due process, and access to the courts, as set forth in **Article I §§ 1, 2, 3, 7, 8, 9, 11, and 25**, and requires an oath of office for public officials under **Article VI § 3**.

112. Defendants' conduct, as described above, violated these provisions by: a. depriving Plaintiff of liberty and property without due course of law; b. conducting an unreasonable seizure and detention at his home; c. burdening his religious and parental exercise; d. denying him meaningful access to an open court of record; and e. allowing officials without the required oath of office to exercise judicial-type power over him.

113. Plaintiff seeks declaratory and injunctive relief under Pennsylvania law paralleling the relief sought under federal law, and to the extent permitted, damages against individual defendants for these violations.

## VII. REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and grant the following relief:

A. **Declaratory Relief**

113. A declaration that, as applied to Plaintiff, Defendants' enforcement practices—including lack of service, absence of a verified complaint, lack of hearings and ability-to-pay determinations, warrantless home arrest, extended pre-hearing detention, coercive "pay or jail" enforcement, institutional pecuniary bias, and ultra vires exercise of judicial power by officials lacking an oath of office—violate the United States Constitution, **42 U.S.C. § 1994**, and the Pennsylvania Constitution.

114. A declaration that any orders, warrants, sanctions, or enforcement actions imposed against Plaintiff through these unconstitutional practices are **void and unenforceable as applied to him**, to the extent consistent with federal jurisdictional doctrines.

## B. Injunctive Relief

**115.** A preliminary and permanent injunction prohibiting Defendants, in their official capacities, and all persons acting in concert with them, from continuing to enforce or attempt to enforce child-support obligations against Plaintiff using the unconstitutional methods described above, unless and until they provide full constitutional safeguards.

**116.** An order requiring Defendants to correct their records so that unconstitutional orders or sanctions are not treated as valid instruments for enforcement, credit reporting, or license actions against Plaintiff.

## C. Monetary Relief

**117.** An award of **restitution and/or compensatory damages** against Defendants in their individual capacities in an amount at least equal to all money taken from Plaintiff (or paid on his behalf by third parties, including the testatrix and testator, under coercion) through the unconstitutional enforcement practices described in this Complaint, together with pre-judgment and post-judgment interest. These sums include, without limitation, payments made solely to prevent Plaintiff's incarceration under the "pay or jail" regime that Defendants administered.

**118.** An award of additional **compensatory damages** for Plaintiff's loss of liberty, emotional distress, spiritual and familial harm, reputational damage, and other non-economic injuries arising from Defendants' conduct.

**119.** An award of **punitive damages** against individual Defendants whose conduct was willful, malicious, or in reckless disregard of Plaintiff's clearly established constitutional rights, in order to deter similar future misconduct

## D. Fees and Costs

**120.** An award of Plaintiff's costs of suit and, where authorized, reasonable attorney's fees under **42 U.S.C. § 1988** and any other applicable fee-shifting provision.

## E. Further Relief

**121.** Such other and further legal and equitable relief as this Court deems just and proper in light of the facts and equitable maxims cited herein.

## VIII. JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted by:

Jonathan Francisco
PO Box 3
Reamstown, Pennsylvania (17567)
Plaintiff, Pro Per
Dated: December 17th 2025

## VERIFICATION

I, Jonathan Francisco, am the Plaintiff in the above-captioned matter. I have read the foregoing **First Amended Verified Complaint** and verify that the factual statements made therein are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 U.S.C. § 1621 and any other applicable law.

I verify that the foregoing is true and correct.

Executed on **December 17th, 2025**.
By:

Jonathan Francisco, Plaintiff

# Certificate of Service

Documents: Amended Verified Complaint, updated Summon

I hereby verify that a copy of the foregoing has been served upon the following persons of record by hand or mail or email on this 17th day of December 2025:

Via ECF (Electronic Document Submission)
**Clerk of Court**
United States District Court, Eastern District of Pennsylvania
James A. Byrne U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

By my Hand or Mail:
Jonathan, Family of the Francisco
**Sui Juris**
C/O PO Box 3
Reamstown, Pennsylvania (17567)

I, Jonathan of the Francisco Family, known to me to be the natural man described herein, who makes oath under the Laws of the Most High God and in accordance with the Maxims of Equity, declares that every statement given above is the whole truth to the best of his knowledge and experience.

**By**:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Eastern District of Pennsylvania

| | | |
|---|---|---|
| Jonathan Francisco | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No.  5:25-cv-05775-JFL |
| | ) | |
| Director Gary Kline, of Lancaster County DRS in his individual & official Capacity; Domestic Relation Section (DRS); County of Lancaster, Pennsylvania; Officer Shane Johnson, in his individual & official capacity | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Jonathan Francisco
C/O PO Box 3
Reamstown, Pennsylvania (17567)

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*