**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JONATHAN FRANCISCO,       : | |
|          Plaintiff,   : | |
|         : | No. 5:25-cv-5775 |
|       v.         : | |

JONATHAN FRANCISCO,
           Plaintiff,           :

                        :      No. 5:25-cv-5775

      v.                :

DIRECTOR GARY KLINE *OF THE LANCASTER*   :
*COUNTY DOMESTIC RELATIONS SECTION*   :
*(DRS) IN HIS OFFICIAL CAPACITY*; COUNTY   :
OF LANCASTER, PENNSYLVANIA; OFFICER   :
SHANE JOHNSON *IN HIS INDIVIDUAL*   :
*CAPACITY*; DOMESTIC RELATIONS SECTION   :
OF LANCASTER COUNTY,   :
               Defendants.    :

**O P I N I O N**
**DRS and Kline's Motion to Dismiss and Motion for Judgment on the Pleadings, ECF Nos. 37 & 38 – Granted**
**Officer Johnson's Motion for Judgment on the Pleadings, ECF No. 42 – Granted**
**County of Lancaster's Motion for Judgment on the Pleadings, ECF No. 44 – Granted**
**Plaintiff's Motion and Supplemental Motion for Preliminary Injunction, ECF Nos. 6, 20, 43 –Dismissed**

**Joseph F. Leeson, Jr.**                                       **June 29, 2026**
**United States District Judge**

## I.      INTRODUCTION

Plaintiff Jonathan Francisco brings the present action against the Lancaster County

Domestic Relations Section ("DRS"), its Director, Gary Kline, the County of Lancaster, and

Officer Shane Johnson. Francisco challenges the child support proceedings against him and his

arrest on a bench warrant for failing to appear at a child support hearing, which he alleges

violated the First, Fourth, Thirteenth, and Fourteenth Amendments, as well as the Pennsylvania

Constitution. He brings his federal constitutional claims under Title 42 U.S.C. § 1983.

Defendants DRS and Kline (in his official capacity as DRS Director) bring the present Motion to

Dismiss Francisco's Amended Complaint, arguing that it is barred by *Younger* abstention and Eleventh Amendment sovereign immunity, the *Rooker-Feldman* doctrine, and that it fails to state a claim. Officer Johnson (in his individual capacity) and the County of Lancaster (and Kline in his individual capacity) bring the present Motions for Judgment on the Pleadings, also asking that the Court dismiss Francisco's Amended Complaint. The Court grants all Motions and dismisses the action in its entirety.

## II.   BACKGROUND

### A.  Factual Allegations

This case stems from a child support action. Alongside the County of Lancaster's and Kline's Motion for Judgment on the Pleadings, they attached the court docket for the child support action, along with numerous notices and warrants. *See* Exs. B & C, ECF Nos. 44-3, 44-4.[1] On April 21, 2023, the Lancaster County Domestic Relations Section ("DRS") initiated a child support action against Francisco. *See* Am. Compl. ¶ 24, ECF No. 14 (citing *Hertzog v. Francisco*, No. 2023-00674 (Lancaster C.P. 2023)). Francisco alleges that he "was never served with a summons or verified complaint," and "no judicial officer conducted an initial hearing." *Id.* ¶ 25. Rather, DRS staff allegedly handled all activity. *See id.*

Francisco alleges that he "did not receive written notice of the legal basis, the nature and cause of the proceedings, or the specific obligations alleged," which amounted to a procedural due process violation. *Id.* ¶¶ 26, 70. Francisco maintains that he "did not appear at any in-person conference or hearing before his arrest; all communications with [] DRS occurred by telephone." *Id.* ¶ 27. During those calls, Francisco allegedly asked DRS to identify the law or statute that

---

[1]     Francisco filed an appeal in his child support proceedings based on allegedly incorrect income calculations, errors in fact, and infringement of due process. *See* Ex. D, ECF No. 44-5.

created an enforceable obligation against him, a contract to which he agreed to be bound, or "any injured party or factual basis justifying the asserted obligation." *Id.* ¶ 28. He alleges that DRS did not provide him with a complaint, sworn affidavit, or any other documentation regarding jurisdiction, yet the matter "moved forward." *Id.* ¶ 29; *see also* ECF No. 44-3 (numerous notices of hearings in the case).

During the child support proceedings, Francisco "did not submit financial statements, pay stubs, or other income documents to [] DRS because he was still disputing the legal basis and jurisdiction of the proceedings." Am. Compl. ¶ 30. Allegedly, "DRS imputed income" to Francisco, "assigning him support obligations based on estimates rather than evidence." *Id.* ¶ 31. He alleges that DRS "never made or documented a determination as to whether [Francisco] was a custodial or noncustodial parent, or whether the child was receiving benefits that would justify treatment of the case as a Title IV-D matter." *Id.* ¶ 32. DRS ostensibly "filed pleadings styled as acting 'on behalf of' the other parent," and acted "as both an administer of Title IV-D processes and a de facto legal representative." *Id.* ¶ 33. Francisco "sent written notices disputing any presumed contract or agency relationship, including a letter of rescission and written demands for proof of authority and subject-matter jurisdiction." *Id.* ¶ 34. Allegedly, the other parent "supplied identifying information to DRS," who "then searched for and associated a Social Security number (SSN) with [Francisco] in the government records and used that association to subject him to [Title] IV-D enforcement." *Id.* ¶ 37.

On May 11, 2024, Officer Shane Johnson arrested Francisco on a bench warrant issued by the DRS. *See id.* ¶¶ 39–41; ECF No. 33-1.[2] DRS issued the bench warrant, which ordered that

---

[2]    The bench warrant, for failing to appear for a child support hearing, is a matter of public record. *See Doe v. Archdiocese of Phila.*, No. 20-3024, 2021 U.S. Dist. LEXIS 38426, at *6–7

the authority in charge of the county jail to notify the Director of DRS (Kline) that it held Francisco. *See* ECF No. 33-1. Francisco alleges that Officer Johnson did not have a warrant and "did not articulate facts establishing probable or lawful grounds to detain" him. Am. Compl. ¶ 43. Francisco contends that Officer Johnson arrested him without a warrant or probable cause. *See id.* ¶ 45. He remained jailed for approximately fifty hours. *See id.* ¶ 50.

Upon release, Francisco "was repeatedly routed into expedited Title IV-D enforcement and contempt proceedings where jail, license suspension, and significant monetary exactions were threatened." *Id.* ¶ 52. DRS "consistently communicated a 'pay or jail' message," and did not determine Francisco's present ability to pay. *Id.* ¶ 53. Francisco allegedly never received: "a. clear notice that ability to pay was the critical issue; b. a meaningful opportunity and mechanism to present financial information; c. an opportunity to respond to opposing evidence; and d. an express finding of present ability to pay before any coercive sanction." *Id.* ¶ 54. Since Francisco could not pay, he alleges that third parties made payments on his behalf. *See id.* ¶ 55. The "[e]nforcement actions have suspended or threatened to suspend [Francisco's] driver's license, impairing his ability to work and travel for any employment. Related traffic citations culminated in suspension without meaningful due process[.]" *Id.* ¶ 59. "Authorities have placed a lien or levy on [Francisco's] bank account, impeding his ability to pay essential bills and depriving him of the use of funds for his own offspring." *Id.* ¶ 60. Francisco alleges that Kline, as DRS Director, ordered the enforcement actions against him, including his arrest, but does not provide much detail as to how Kline did so. *See id.* at 3.

---

(E.D. Pa. Mar. 2, 2021) (explaining that in deciding a motion for judgment on the pleadings the court may consider matters of public record).

There have been contempt hearings throughout the case based upon Francisco's failure to pay child support in November 2025. *See id.* ¶ 62; *see also* ECF No. 44-4.

Also, Francisco alleges that DRS staff acted *ultra vires*, since they have not taken or filed an oath of office, but exercised functions resembling judicial power. *See* Am. Compl. ¶¶ 63–66. Such acts included "a. making support and enforcement recommendations; b. controlling the scheduling and scope of contempt and enforcement proceedings; c. influencing or initiating warrants and other coercive measures; and d. shaping the conditions under which [Francisco] could access a judge or court of record." *Id.* ¶ 65. As a result, Francisco maintains that the resulting orders and enforcement actions against him are void. *See id.* ¶ 66.

Francisco's Amended Complaint does not specify which claims are brought against which Defendants. Yet, Francisco alleges, ostensibly against all Defendants, (I) a violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution; (II) unreasonable seizure and detention under the Fourth Amendment to the United States Constitution; (III) peonage and involuntary servitude under the Thirteenth Amendment to the United States Constitution; (IV) denial of access to a court of record, and *ultra vires* exercise of judicial power under the Fourteenth Amendment to the United States Constitution; (V) a violation of his free exercise of religion under the First Amendment to the United States Constitution; (VI) declaratory and injunctive relief; and (VII) violations of the Pennsylvania Constitution. *See id.* ¶¶ 67–113. Francisco seeks monetary damages and declaratory and injunctive relief (both prospective and retrospective). *See id.* ¶¶ 113–121. Francisco sometimes delineates the role of each Defendant, including that DRS and Kline "established and enforced policies and practices" that caused or authorized the enforcement actions against him, and that DRS never explained the proceedings against him. *See id.* ¶¶ 71, 80. Francisco sues Kline in his

official capacity as DRS Director for both prospective and retrospective declaratory and injunctive relief and in his individual capacity for monetary damages. *See id.* ¶ 9.

**B.  Procedural History**

Francisco first brought his Complaint on October 7, 2025.[3] *See* ECF No. 2. The Court denied his petition to proceed *in forma pauperis*, ECF No. 1, on October 15, 2025. *See* ECF No. 7.  Francisco paid the filing fee on November 13, 2025. *See* ECF No. 10. Francisco filed his Amended Complaint on December 17, 2025. *See* Am. Compl., ECF No. 14.

Francisco filed a Motion for Preliminary Injunction on January 13, 2026. *See* ECF No. 20. DRS and Kline filed a Response in Opposition on January 27, 2026. *See* DRS Resp., ECF No. 23. Alongside the Response, DRS and Kline attached an August 25, 2025 opinion by the Lancaster County Court of Common Pleas denying Francisco's appeal and affirming the April 14, 2025 child support order. *See* DRS Resp. Ex. A, ECF No. 23-1. The opinion also noted that Francisco was given a hearing about his concerns about his income calculation and due process. *See id.* at 8. The County and Kline (in his individual capacity) filed a Response in Opposition on February 3, 2026. *See* ECF No. 32. Officer Johnson filed a Response in Opposition on February 5, 2026. *See* ECF No. 34. Francisco filed a Reply in support of his Motion on February 9, 2026. *See* Reply, ECF No. 36.

The County of Lancaster and Kline (in his individual capacity) filed an Answer on February 3, 2026. *See* ECF No. 31. Officer Johnson filed an Answer with affirmative defenses on February 5, 2026. *See* ECF No. 33.

---

[3]     Francisco also brought claims under Section 1983 against Delaney J. Hertzog and Judge Christina M. Parsons, which the Court dismissed on March 20, 2025. *See Francisco v. Hertzog*, No. 25-0464, 2025 WL 873017, at *1 (E.D. Pa. Mar. 20, 2025), *aff'd*, No. 25-1778, 2025 WL 3034699 (3d Cir. Oct. 30, 2025).

DRS and Kline (in his official capacity) filed a Motion to Dismiss the Amended Complaint on February 17, 2026. *See* Mot., ECF Nos. 37, 38 (amended). DRS and Kline argue that (1) the case is barred by *Younger* abstention; (2) the case is barred by the *Rooker-Feldman* doctrine; (3) Defendants DRS and Kline are immune from suit under the Eleventh Amendment; and (4) Francisco fails to state a due process claim. *See generally id.*

Francisco filed a Response in Opposition to the DRS and Kline Motion on March 19, 2026.[4] *See* Pl. Resp. to DRS Mot., ECF Nos. 40, 41. In it, he challenges "ongoing enforcement conduct" by Defendants. *Id.* at 4. He also maintains that he could not raise his federal claims in state court since he challenges the constitutionality of the DRS procedures. *See id.* at 5.

Officer Johnson filed a Motion for Judgment on the Pleadings on April 24, 2026. *See* Johnson Mot., ECF No. 42. In it, Officer Johnson argues that he is immune from suit pursuant to qualified immunity and that Francisco fails to plead any facially plausible claims against him. *See id.* 3–8.

On May 1, 2026, the County of Lancaster and Kline, in his individual capacity, filed a Motion for Judgment on the Pleadings. *See* Cnty. Mot., ECF No. 44. They argue that no underlying constitutional violations occurred. *See id.* 7–13. The County and Kline also attached child support orders that they alleged Francisco disobeyed when he failed to pay the amount due. *See* ECF No. 44-7. Francisco filed a Response in Opposition to both Motions for Judgment on the Pleadings on May 26, 2026. *See* Resp. to both Mots., ECF No. 48.

Also on May 1, 2026, Francisco filed a Supplemental Motion for Preliminary Injunction. *See* Suppl. Mot., ECF No. 43. The County and Kline (in his individual capacity) filed a Response

---

[4]    *See also* ECF No. 39 (providing the Order dated March 16, 2026, stating that Francisco failed to timely respond to the Motion to Dismiss and extending the time for him to do so).

in Opposition to Francisco's Supplemental Motion on May 12, 2026. *See* ECF No. 45. DRS and Kline (in his official capacity) filed a Response in Opposition to the Supplemental Motion on May 13, 2026. *See* ECF No. 46.

All Motions are now fully briefed and ready for disposition.

## III. LEGAL STANDARDS

### A. Motion to Dismiss – Review of Applicable Law

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations ... raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). "[I]n light of *Twombly*, Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief. We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." *Phillips*, 515 F.3d at 233 (citing *Twombly*, 550 U.S. at 555 n.3). *See also* Fed. R. Civ. P. 8(a) (requiring the complaint to contain "a short and plain statement of the claim showing

that the pleader is entitled to relief"). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Also, "a document integral to or explicitly relied upon in the complaint may be considered." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

Courts also have an obligation to construe the filings of *pro se* litigants liberally. *See Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009). This extends to the construction of *pro se* pleadings. *Higgs v. Att'y Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a *pro se* litigant's pleadings is well-established."), *as amended*, (Sept. 19, 2011); *see Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013). Although *pro se* litigants are entitled to have the substance of their filings liberally construed, "[a]t the end of the day, they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Mala*, 704 F.3d at 245 (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)).

**B. Motion for Judgment on the Pleadings – Review of Applicable Law**

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "In deciding a motion for judgment on the pleadings under Rule 12(c), the Court considers the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, matters of public record, and indisputably authentic documents

attached to the motion—provided the claims are based on these documents." *Doe v. Archdiocese of Phila.*, No. 20-3024, 2021 U.S. Dist. LEXIS 38426, at *6-7 (E.D. Pa. Mar. 2, 2021). *See also Vacanti v. Apothaker & Assocs., P.C.*, No. 09-5827, 2010 U.S. Dist. LEXIS 120109, at *6 (E.D. Pa. Nov. 12, 2010) (explaining that the notable difference between the standard under 12(b)(6) and 12(c) is "that the court in a motion on the pleadings reviews not only the complaint but also the answer and written instruments attached to the pleadings" (internal quotations omitted)). "Judgment will not be granted unless the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law. [The court] must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005) (internal citations omitted).

### C. Eleventh Amendment Immunity – Review of Applicable Law

"The Eleventh Amendment of the United States Constitution . . . imposes a jurisdictional bar against individuals bringing suit against a state or its agencies in federal court, or against a state official in his or her official capacity." *Durham v. Kelley*, 82 F.4th 217, 227 (3d Cir. 2023) (footnotes omitted). *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978) ("[T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies."); *Karns v. Shanahan*, 879 F.3d 504, 512 (3d Cir. 2018) (explaining that this immunity extends to suits brought by in-state plaintiffs.); *A.W. v. Jersey City Pub. Schs.*, 341 F.3d 234, 238 (3d Cir. 2003) ("This protection from suit extends to state agencies as well as state officials sued in their official capacities for monetary damages."). "Individual state employees sued in their official capacity are []entitled to Eleventh Amendment immunity because 'official-capacity suits generally represent only another way of pleading an action' against the state." *Betts*

*v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010) (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)); *see also Sheils v. Bucks Cnty. Domestic Rels. Section*, 921 F. Supp. 2d 396, 406 (E.D. Pa. 2013) ("[C]laims seeking retrospective injunctive and declaratory relief and damages against state employees in their official capacities are tantamount to suits against the Commonwealth itself. The Eleventh Amendment immunity therefore applies.") (citing *Hafer*, 502 U.S. at 25).

"Eleventh Amendment immunity is, however, subject to three primary exceptions: (1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law." *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) (citing *MCI Telecomm. Corp. v. Bell Atl.-Pa.*, 271 F.3d 491, 503 (3d Cir. 2001)). Under the second exception, a state's waiver of immunity must "be unequivocally expressed." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984), *superseded by statute on other grounds*, 28 U.S.C. § 1367. *See* 1 Pa. C.S. § 2310 ("Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, . . . the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity."); *see also* 42 Pa. C.S. § 8522(b) (listing the nine areas in which immunity has been waived). Under the third exception, which is based on the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908), the "relief sought must be prospective, declaratory, or injunctive relief governing an officer's future conduct and cannot be retrospective, such as money damages," *MCI Telecomm. Corp.*, 271 F.3d at 506 (citing *Pennhurst*, 465 U.S. at 102–03). The plaintiff has the "burden of showing a

substantial likelihood that he was likely to suffer some future injury at the hands of a named party." *O'Callaghan v. Hon. X*, 661 F. App'x 179, 182 (3d Cir. 2016).[5]

### D. Quasi-Judicial Immunity

"[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages. Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991) (internal citation omitted). Judicial "immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." *Bernard v. Ignelzi*, No. 25-1245, 2025 U.S. App. LEXIS 34072, at *5 (3d Cir. Dec. 31, 2025). An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge." *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000). "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Bernard*, 2025 U.S. App. LEXIS 34072, at *5 (internal citations omitted)). "Generally, . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'" *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)). Judicial immunity extends to suits for money damages and to suits for

---

[5]    Worth mentioning is the distinction between Eleventh Amendment immunity and sovereign immunity, which are "two different doctrines of protection." *Quinn v. Palakovich*, No. 04-1894, 2005 WL 1155871, at *4 (M.D. Pa. Apr. 19, 2005), *report and recommendation adopted*, No. 04-1894, 2005 WL 1155873 (M.D. Pa. May 6, 2005). In short, "Eleventh Amendment immunity bars citizen suits against unconsenting states in federal court," *id.*, whereas "the doctrine of sovereign immunity bars damage claims for state law torts against 'the Commonwealth, and its officials and employees acting within the scope of their duties,'" *id.* (citing 1 Pa. C.S. § 2310) (internal quotations omitted). The claims before the Court trigger Eleventh Amendment immunity, so the Opinion focuses on "official capacity" immunity, rather than sovereign immunity.

declaratory and injunctive relief. *See Bernard*, 2025 U.S. App. LEXIS 34072, at *5 (citing

*Mireles*, 502 U.S. at 9 (money damages); *Allen v. DeBello*, 861 F.3d 433, 439 (3d Cir. 2017)

(declaratory and injunctive relief)). Because judges must feel free to act without fear of incurring

personal liability for their actions in court, judicial immunity remains in force even if the actions

are alleged to be legally incorrect, in bad faith, malicious, or corrupt, *Mireles*, 502 U.S. at 11–12,

or are taken as a result of a conspiracy with others. *See Dennis v. Sparks*, 449 U.S. 24, 27 (1980).

Similarly, individuals charged with the duty of carrying out facially valid court orders

enjoy quasi-judicial absolute immunity from liability in a suit challenging conduct prescribed by

that order. *See Gallas,* 211 F.3d at 772–73; *see also Russell v. Richardson*, 905 F.3d 239, 249–50

(3d Cir. 2018) (explaining that "an officer's fidelity to the specific order[] of the judge marks the

boundary for labeling [his] act quasi-judicial, and a court order carries an implicit caveat that the

officer follow the Constitution in executing it") (internal quotations and citations omitted). The

scope of quasi-judicial immunity "extends to court personnel, such as domestic relations staff

attorneys and hearing officers, 'who perform discretionary, and adjudicative functions under the

guidance and direction of the courts.'" *Parker v. Lehigh Cnty. Ct. Domestic Rel. Section*, No. 23-

cv-3263, 2023 WL 6881055, at *7 (E.D. Pa. Oct. 18, 2023*), aff'd sub nom. Parker v. Lehigh

Cnty. Off. of Domestic Rels.*, No. 23-2920, 2024 WL 705707 (3d Cir. Feb. 21, 2024) (citing

*Blackwell v. Tierney*, No. 21-1904, 2022 WL 19778, at *4 (W.D. Pa. Jan. 3, 2022)). Domestic

relations section staff are entitled to quasi-judicial immunity from claims that "arise out of their

duties for []DRS, specifically, implementing and enforcing child support orders. Their immunity

is not rendered a nullity even if they made a mistake or improperly discharged those duties."

*Parker*, 2023 WL 6881055, at *7 (citing *Lewis v. W. Roxbury Dist. Ct.*, No. 12-11544, 2013 WL

4854117, at *6 (D. Mass. Sept. 10, 2013)). Quasi-judicial immunity bars any such claims

brought against Domestic Relations Section employees in their individual capacities. *See Nellom v. Delaware Cnty. Domestic Rel. Section*, 145 F. Supp. 3d 470, 485 (E.D. Pa. 2015) (citing *Bryant v. Cherna*, 520 F. App'x 55, 58 (3d Cir. 2013); *Ernst v. Child & Youth Servs.*, 108 F.3d 486, 495 (3d Cir. 1997)).

### E.  Qualified Immunity

The Supreme Court has stated that "[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Whether qualified immunity applies depends on "(1) whether the plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether the right was 'clearly established' at the time of the official's conduct." *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 241 (3d Cir. 2016) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "Ordinarily, it is reasonable for an officer to assume that a warrant has been issued for probable cause ... [and], [t]herefore, we have generally extended immunity to an officer who makes an arrest based on an objectively reasonable belief that there is a valid warrant." *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 272–73 (3d Cir. 2000).

### F.  *Younger* Abstention – Review of Applicable Law

As a general matter, a federal court has an obligation to hear a case properly brought within its jurisdiction. *See Borowski v. Kean Univ.*, 68 F.4th 844, 849 (3d Cir. 2023). "*Younger* abstention is an exception to that rule that applies when certain types of state proceedings are ongoing at the time a federal case is commenced." *PDX N., Inc. v. Comm'r New Jersey Dep't of Lab. & Workforce Dev.*, 978 F.3d 871, 882 (3d Cir. 2020). "Abstention serves a dual-purpose in these situations: (1) to promote comity, 'a proper respect for state functions,' by restricting

federal courts from interfering with ongoing state judicial proceedings and (2) to restrain equity jurisdiction from operating when state courts provide adequate legal remedies for constitutional claims and there is no risk of irreparable harm." *Id*. (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013)).

The *Younger* abstention extends to only "three classes of cases: (1) state criminal prosecutions, (2) state civil enforcement proceedings, and (3) state civil proceedings involving orders in furtherance of the state courts' judicial function." *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 138 (3d Cir. 2014); *see also Sprint*, 571 U.S. at 78–79. In addition, where the underlying matter concerns a state civil enforcement proceeding, the case must satisfy the *Middlesex* conditions in that the state proceeding: "(i) [is] ongoing and judicial in nature; (ii) implicate[s] important state interests; and (iii) afford[s] an adequate opportunity to raise federal claims." *Borowski*, 68 F.4th at 849. Abstention allows "state courts to try state cases free from interference by federal courts." *Younger*, 401 U.S. at 43. Moreover, it serves the important purpose "to prevent erosion of the role of the jury and avoid a duplication of legal proceedings and legal sanctions where a single suit would be adequate to protect the rights asserted." *Id.* at 91.

If the three requirements for abstention are met, a federal court may only intervene with state court proceedings "if the federal plaintiff will 'suffer irreparable injury' absent equitable relief." *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 366 (1989) (quoting *Younger*, 401 U.S. at 43–44). The "cost, anxiety, and inconvenience" that comes with state court proceedings does not constitute irreparable injury. *Kugler v. Helfant*, 421 U.S. 117, 124 (1975) (citing *Younger,* 401 U.S. at 46). "Only in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid

conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown is federal injunctive relief against pending state prosecutions appropriate." *Perez v. Ledesma*, 401 U.S. 82, 85 (1971). In other words, for a federal court to intervene when there are ongoing or pending state court proceedings, the "circumstances must be 'extraordinary' in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation." *Kugler*, 421 U.S. at 125.

### G.  Procedural Due Process – Review of Applicable Law

"To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). As to the second element, the "fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Additionally, to assert a procedural due process claim against a state actor, the plaintiff "must, at a minimum, prove recklessness or 'gross negligence' and in some instance may be required to show a 'deliberate decision to deprive' the plaintiff of due process.'" *Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 238 (3d Cir. 2013) (quoting *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1277 (3d Cir. 1994)). A "state may cure a procedural deprivation by providing a later procedural remedy." *Bonilla v. City of Allentown*, 359 F. Supp. 3d 281, 297 (E.D. Pa. 2019) (referencing *Marchionni v. SEPTA*, No. 98-6491, 2000 WL 730348, at *2 (E.D. Pa. June 7, 2000)).

### H. First Amendment Free Exercise of Religion

The First Amendment to the United States Constitution provides that "Congress shall make no law ... prohibiting the free exercise [of religion]." *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 165 (3d Cir. 2002) (quoting U.S. Const. amend. I) (alteration in original). The Free Exercise Clause applies to state and local government under the Fourteenth Amendment. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). "Depending on the nature of the challenged law or government action, a free exercise claim can prompt either strict scrutiny or rational basis review." *Tenafly Eruv Ass'n, Inc.*, 309 F.3d at 165. When a challenged law "is 'neutral' and 'generally applicable,' and burdens religious conduct only incidentally, the Free Exercise Clause offers no protection." *Id.* (citing *Employment Div. v. Smith*, 494 U.S. 872, 879 (1990)); *see also Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359, 364 (3d Cir. 1999) (explaining that in cases involving state laws affecting religious freedoms, *Smith* is the appropriate framework for analysis because the federal Religious Freedom Restoration Act of 1993, passed by Congress in response to *Smith*, does not apply to state actions). A plaintiff asserting a free exercise violation must allege that a governmental entity "has burdened his sincere religious practice" and that the policy is "not 'neutral' or 'generally applicable.'" *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 (2022) (citing *Smith* at 879–881).

A government policy is not neutral if it is "specifically directed at ... religious practice." *Kennedy*, 597 U.S. at 526 (citing *Smith*, 494 U.S. at 878). "Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Fulton v. City of Phila.*, 593 U.S. 522, 533 (2021) (citation omitted). A government policy is not generally applicable if it "prohibits religious conduct while permitting

secular conduct that undermines the government's asserted interests in a similar way," or if it provides "a mechanism for individualized exemptions." *Kennedy*, 597 U.S. at 526 (citing *Fulton*, 593 U.S. at 533).

## IV.    ANALYSIS

All of Francisco's claims arise from the child support proceeding. The Court dismisses Francisco's Amended Complaint for three reasons. First, DRS and Kline are immune from suit, and Officer Johnson is immune from suit for damages. DRS is immune from suit under the Eleventh Amendment. Kline is immune from suit for damages and retrospective declaratory and injunctive relief under the Eleventh Amendment. Kline is also immune from suit under quasi-judicial immunity. Based on Officer Johnson's arrest of Francisco pursuant to a valid bench warrant, Officer Johnson is immune from suit for damages under qualified immunity. Second, the Court abstains from reviewing Francisco's claims for prospective injunctive relief against Kline and general injunctive relief against Officer Johnson and the County of Lancaster, pursuant to the *Younger* abstention doctrine. Third, Francisco's procedural due process, First Amendment free exercise of religion, Thirteenth Amendment and *ultra vires* claims against the County fail to state a claim.

### A.    Immunity

Here, DRS is a subunit of Pennsylvania's unified judicial system and is thus entitled to sovereign immunity under the Eleventh Amendment. *See Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008); *see also Bryant v. Cherna*, 520 F. App'x 55, 57 (3d Cir. 2009) (not precedential) ("[T]he state courts of Pennsylvania, including their domestic relations sections, are entitled to immunity from suit in federal court pursuant to the Eleventh Amendment."); *Chilcott v. Erie Cnty. Domestic Rels.*, 283 F. App'x 8, 10 (3d Cir. 2008)

(holding that the Erie County Domestic Relations Section was immune from suit under the Eleventh Amendment); *Nellom v. Delaware Cnty. Domestic Rels. Section*, No. 15-1229, 2015 WL 13619482, at *1 (E.D. Pa. May 4, 2015), *report and recommendation adopted*, No. 15-1229, 2015 WL 13620417 (E.D. Pa. May 26, 2015) (finding that the Delaware County Domestic Relations Section was "immune from suit under the Eleventh Amendment."). This immunity bars all claims for relief against DRS. Francisco's claims are dismissed against DRS. [6]

Also, Kline, as the Director of DRS, is entitled to both Eleventh Amendment sovereign immunity and quasi-judicial immunity for actions he took in relation to Francisco's child support proceeding.

First, Kline is also entitled to Eleventh Amendment immunity for damages and retrospective declaratory and injunctive relief. Francisco sues Kline in his official capacity as Director of the Lancaster County Domestic Relations Section. The Eleventh Amendment bars official capacity suits against public officials "seeking retrospective injunctive and declaratory relief and damages against state employees in their official capacities are tantamount to suits against the Commonwealth itself." *Sheils*, 921 F. Supp. 2d at 406; *see also Hafer*, 502 U.S. at 26.

However, the United States Supreme Court in *Ex parte Young* carved out an exception to Eleventh Amendment sovereign immunity, permitting a plaintiff to bring claims against state officials in their official capacities for prospective, injunctive relief to remedy ongoing violations of federal law. *See* 209 U.S. at 166–168 (permitting "certain private parties to seek judicial

---

[6]    Francisco also cannot meet the first element of a claim against DRS under Section 1983 because DRS is not a "person" subject to suit under Section 1983. *Green v. Domestic Rels. Section Ct. of Common Pleas Compliance Unit Montgomery Cnty.*, 649 F. App'x 178, 180 (3d Cir. 2016) ("[A]ll components of the judicial branch of the Pennsylvania government are state entities and thus are not persons for section 1983 purposes.") (quoting *Callahan v. City of Phila.*, 207 F. 3d 668, 674 (3d Cir. 2000)); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65 (1989) ("[A] State is not a 'person' within the meaning of § 1983.").

orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law"). Where a state official allegedly acts under the state authority, and the action is alleged to be unconstitutional, using the authority of the state to enforce an unconstitutional act is "a proceeding without the authority of, and one which does not affect, the state in its sovereign or governmental capacity." *Id.* at 159. *Accord MCI Telecomm. Corp.*, 271 F.3d at 503 (recognizing an exception to Eleventh Amendment immunity for "suits against *individual state officers* for prospective relief to end an ongoing violation of federal law" (emphasis added)). For the third exception to apply, Francisco needs "to allege facts from which it appear[s] substantially likely that he would suffer future injury" at the hands of Kline. *O'Callaghan*, 661 F. App'x at 182 ("[I]njunctive relief anticipates future conduct among the named parties."). Francisco brings claims for prospective injunctive relief against Kline in his official capacity, alleging that the enforcement actions against him are ongoing, *see* Pl. Resp. to DRS Mot. 4, meaning the *Ex parte Young* exception could apply.

However, it is unlikely that requiring Francisco's attendance at a child support hearing is an "ongoing violation of federal law." *Hess*, 297 F.3d at 323. The Pennsylvania Rules of Civil Procedure permit a state court to issue a bench warrant for the arrest of a party that fails to appear at a hearing as directed. *See* Pa. R. Civ. P. No. 1910.13-1.[7] Nevertheless, the Court

---

[7]    Pennsylvania Rule of Civil Procedure 1910.13-1 states as follows:

(a) If a party fails to appear at a conference and/or hearing as directed by order of court, the court may issue a bench warrant for the arrest of the party if it finds
    (1) following a hearing on the record that the party had actual notice that the party was ordered to attend the conference and/or hearing, or
    (2) upon the affidavit of a hearing officer or conference officer that
        (i)    the order of court scheduling the conference and/or hearing was served by ordinary mail with the return address of the domestic relations section appearing thereon, that the mail was not returned to the domestic relations section within fifteen days after mailing,

considers whether quasi-judicial immunity and *Younger* abstention apply to Francisco's claims for prospective injunctive relief against Kline.

Second, Kline is also entitled to quasi-judicial immunity for his purported role in ordering the enforcement actions, including the bench warrant. To the extent that Francisco alleges that Kline violated his constitutional rights by ordering the enforcement actions against him, including Francisco's arrest for failing to appear for a scheduled hearing, quasi-judicial immunity bars such claims because Kline's actions were taken in his role as DRS director. *See Burrell v. Loungo*, 750 F. App'x 149, 156 (3d Cir. 2018) (applying quasi-judicial immunity to the director of the Lackawanna County Domestic Relations Office challenging the conduct of its director in a child support proceeding for "any claims against these Defendants for their actions in charging and prosecuting Burrell for his failure to pay child support") (citing *Hughes v. Long*, 242 F.3d 121, 125 (3d Cir. 2001)); *see also Lepre v. Tolerico*, 156 F. App'x 522, 525 (3d Cir. 2005) (noting that "defendants, all of whom are officers of the Domestic Relations Section of the Family Court of Lackawanna County, are entitled to quasi-judicial immunity for their actions in filing the

---

and that, at a date after the order of court was mailed, the domestic relations section has verified through the U.S. Postal Service or by electronic means that mail for the party was being delivered at the address to which the court order was mailed; or

(ii)     the party signed a receipt indicating acceptance of a copy of the court order; or

(iii)    an employee of the court handed a copy of the order to the party; or

(iv)    a competent adult handed a copy of the court order to the party, and filed an affidavit of service.

(b) The request for a bench warrant shall be made by the domestic relations office within sixty days following the party's failure to appear. The request shall be in the form provided by Rule 1910.13-2(b), and shall include the hearing officer or conference officer's certification that the party has not appeared for any domestic relations matter involving the same parties since the date the party failed to appear.

Pa. R. Civ. P. No. 1910.13-1.

Petition enforcing the Family Court's support order"); *Forrester v. White*, 484 U.S. 219, 225 (1988) (recognizing that the protections of judicial immunity extend to officials "who perform quasi-judicial functions"); *Dormevil v. Delaware Cnty. Domestic Rels. Section*, No. 23-3025, 2023 WL 6144845, at *6 (E.D. Pa. Sept. 20, 2023) (applying quasi-judicial immunity to the director of the Delaware County Domestic Relations Office for the director's actions relating to the child support proceeding); *Nellom*, 145 F. Supp. 3d at 485 (finding that DRS employees "enjoy the benefits of absolute quasijudicial immunity because (1) their functions in proceedings are 'closely analogous to the functions performed by prosecutors in criminal proceedings'; (2) 'the public policy considerations that countenance immunity for prosecutors" are applicable to Domestic Relations Section employees performing these functions; and (3) support proceedings 'incorporate important safeguards that protect citizens from unconstitutional actions' by such employees" (citing *Ernst v. Child & Youth Servs.*, 108 F.3d 486, 495 (3d Cir. 1997)). Therefore, Francisco's claims against Kline are dismissed.

Additionally, qualified immunity protects Officer Johnson from liability for damages. Francisco alleges that Officer Johnson violated his Fourth Amendment right to be free from unreasonable seizures when he arrested him because he lacked probable cause and lacked a warrant. *See* Am. Compl. ¶¶ 42, 45, 77–78. However, Officer Johnson arrested Francisco pursuant to a bench warrant for failure to appear. *See* ECF No. 34-1 (the bench warrant). "If probable cause exists [to arrest an individual], then there is no necessity for further inquiries concerning qualified immunity." *Johnson v. Watson*, 113 F. App'x 482, 485 (3d Cir. 2004) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). *See also United States v. Stearn*, 597 F.3d 540, 561 (3d Cir. 2010) (quoting *United States v. Hodge*, 246 F.3d 301, 307–08 (3d Cir. 2001)) (noting that, in the context of motions to suppress, "the 'mere existence of a warrant ... suffices to prove

that an officer conducted a search in good faith'"). Francisco fails to allege that the bench warrant is not valid. Accordingly, Officer Johnson's arrest of Francisco pursuant to a warrant did not violate Francisco's clearly established constitutional rights. Therefore, Officer Johnson is immune from suit for damages pursuant to qualified immunity.

### B. *Younger* Abstention

Even if quasi-judicial immunity did not apply to Kline, the *Younger* abstention doctrine dictates that this Court abstain from hearing Plaintiff's claims for prospective injunctive relief against Kline in his official capacity. The *Younger* abstention doctrine also applies to Francisco's claims for injunctive relief against Officer Johnson and the County of Lancaster. Such claims arise from Kline's alleged ordering of the enforcement actions against Francisco, and Officer Johnson's and the County's alleged carrying out of the enforcement actions. Actions challenging the enforcement of child support orders generally fall into the "exceptional circumstances" requiring courts to abstain under *Younger*. *Gittens v. Kelly*, 790 F. App'x 439, 441 (3d Cir. 2019) (*per curiam*) ("To the extent that the state court proceeding regarding [the plaintiff's] child support obligations [was] ongoing, the District Court properly invoked the *Younger* abstention doctrine.").[8] Likewise, the United States Supreme Court has applied the third category ("state civil proceedings involving orders in furtherance of the state courts' judicial function") to cases involving "challenges to the processes by which the State compels compliance with the judgments of its courts." *Smith & Wesson Brands, Inc. v. Att'y Gen. of N.J.*, 27 F.4th 886, 894 (3d Cir. 2022) (internal citations omitted). Here, this case is a challenge to Kline's (and the County's) ordering of the enforcement actions, given Francisco's complaint about being arrested by Officer

---

[8]    *See Mikhail v. Kahn*, 991 F. Supp. 2d 596, 627–28 (E.D. Pa. 2014) (finding that child custody actions are "precisely the type of case suited to *Younger* abstention, as the state proceeding implicates the important state interest of preserving the state's judicial system").

Johnson for failing to appear for court hearings, as well as being forced to pay child support. Francisco's present action falls into the third category of cases.

Abstention is proper when: (1) there is an ongoing state judicial proceeding; (2) the proceeding implicates important state interests; and (3) there is an adequate opportunity to raise constitutional challenges in the state proceeding. *See Malhan v. Sec'y, United States Dep't of State*, 938 F.3d 453, 462–64 (3d Cir. 2019). The Supreme Court instructs the Court to abstain from deciding issues in a pending state proceeding under *Younger.* The Court thus applies *Younger* abstention with regard to Francisco's claims for prospective injunctive relief against Kline in his official capacity, as well as his claims for declaratory and injunctive relief against the County and Officer Johnson.

Here, first, Francisco is part of an ongoing child support proceeding in the Pennsylvania state court system. Francisco concedes that his child support proceeding and its enforcement actions are ongoing. *See* Pl. Resp. to DRS Mot. 4; *see also* 23 Pa. C.S. § 4352(a) (providing state courts with continuing jurisdiction over child support orders); *Sheils*, 921 F. Supp. 2d at 410 (finding that child support proceedings were "ongoing" under *Younger* where the plaintiff sought prospective injunctive relief as to the garnishment of his wages, the threat of incarceration, the reporting of information to credit bureaus, and his passport eligibility); *Dormevil*, No. 23-3025, 2023 WL 6144845, at *5 (noting that child support proceedings are ongoing for purposes of *Younger* abstention). Therefore, Francisco's ongoing child support proceeding meet the first element of *Younger* abstention.

Second, Francisco's ongoing child support proceedings involve important state interests. "Family relations are a traditional area of state concern." *Moore v. Sims*, 442 U.S. 415, 435 (1979). Furthermore, federal courts have no general jurisdiction over domestic relations actions,

including child support proceedings, only state courts do. *See Lazaridis v. Wehmer*, 591 F.3d 666, 671 (3d Cir. 2010) ("This [child custody case] is precisely the type of case suited to *Younger* abstention, as the state proceeding implicates the important state interest of preserving the state's judicial system."). Here, there is no federal interest in Francisco's child support proceeding, but there is an important state interest in child support. Accordingly, the important state interest in child support enforcement meets the second element of *Younger* abstention.

Third, Francisco can raise his constitutional challenges in Pennsylvania state court. Francisco has the burden to show that "state procedural law barred presentation of [his] claims." *Lazaridis*, 591 F.3d at 670–71; *see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987). The presumption underlying *Younger* abstention is that "[s]tate courts are every bit as competent to deal with the [plaintiff's] claims ... and this, of course, includes the ability to address claims under both the State constitution and the Federal constitution." *Lui v. Comm'n on Adult Entm't Establishments*, 369 F.3d 319, 326 (3d Cir. 2004); *see Juidice v. Vail,* 430 U.S. 327, 337 (1977) (noting that *Younger* requires only "an opportunity to present federal claims in a state proceeding"). The Lancaster County Court of Common Pleas, of which DRS is one section, has the ability to hear Francisco's claims. Therefore, Francisco has not met his burden of showing that a procedural bar prevented him from presenting his claims in state court.[9]

---

[9]    Even if a case meets all three *Younger* elements, abstention is not appropriate if a plaintiff can establish that "(1) the state proceedings are being undertaken in bad faith or for purposes of harassment or (2) some other extraordinary circumstances exist, such as proceedings pursuant to a flagrantly unconstitutional statute, such that deference to the state proceeding will present a significant and immediate potential for irreparable harm to the federal interests asserted." *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989). "The [United States] Supreme Court has stated that such circumstances must be 'extraordinary' in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, *not merely in the sense of presenting a highly unusual factual situation*, such that the state court is incapable of fairly and fully adjudicating the federal issues before it." *Mikhail*, 991 F. Supp. 2d at 630. Here, Francisco fails to plead that the

The Court dismisses Francisco's remaining claims for prospective injunctive relief against Kline in his official capacity and his claims for declaratory and injunctive relief against Officer Johnson and the County of Lancaster. [10]

### C.      Claims for damages against County of Lancaster

Unlike DRS, which is a subunit of the Commonwealth of Pennsylvania, "cities and counties do not enjoy Eleventh Amendment immunity." *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 47 (1994). *See, e.g., Mt. Healthy City Bd. of Ed. v. Doyle,* 429 U.S. 274, 280 (1977). Thus, the Court must consider whether Francisco plausibly pleads claims against the County of Lancaster under the Fourteenth Amendment Due Process Clause, the First Amendment Free Exercise Clause, and the Thirteenth Amendment.

Francisco does not. Initially, he fails to plead a procedural due process violation against the County of Lancaster. Francisco alleges that he did not have notice of any proceedings against him and had no opportunity to be heard. Quite the opposite. The pleadings show that Francisco had notice of the child support hearings and numerous opportunities to present his case throughout the child support action.

First, the pleadings and exhibits show that Francisco received notice of hearings and trials to establish paternity and child his support obligations. *See* ECF No. 44-3. Francisco also had

---

state proceedings are being undertaken in bad faith. Likewise, there are no extraordinary circumstances that make the Court's abstention inappropriate.

[10]      Since the Court dismisses Francisco's claims against DRS, Kline, and Officer Johnson, and Francisco's claims for declaratory and injunctive relief against the County based upon *Younger* abstention and immunity, the Court need not address whether the *Rooker-Feldman* doctrine would bar the claims. *See Mikhail*, 991 F. Supp. 2d at 623 (noting that because courts consider child custody proceedings "as a whole, rather than as individual, [discrete] hearings" supported the application of *Younger* abstention rather than *Rooker-Feldman* abstention); *see also Dormevil*, 2023 WL 6144845, at *5 (analogizing child custody proceedings to child support proceedings when applying *Younger* abstention).

notice of enforcement of his child support obligations, including requesting issuance of bench warrants for his numerous failures to appear at court proceedings (for which he also received written notice). *See* ECF No. 44-4. Francisco fails to allege that he did not have notice of the child support proceeding and resulting enforcement actions against him.

Second, Francisco had numerous opportunities to be heard regarding the child support proceeding. Francisco himself failed to raise his current concerns. The August 25, 2025 Lancaster County Court of Common Pleas opinion provides that Francisco "stated objections at the [child support] hearing," and "did not address the[] issues [of allegedly inaccurate income calculations] in any way at the hearing, despite being asked of the court at least 4 times to address those very types of issues." DRS Resp. to Mot. for Prelim. Injunction 8, ECF No. 23-1; *see also* ECF No. 44-6. DRS held numerous hearings regarding the state child support case, at which Francisco attended and even testified. Francisco also admits in his Amended Complaint that he did not submit financial statements or pay stubs to DRS because he challenged the court's jurisdiction over him. *See* Am. Compl. ¶ 30. Francisco also "sent written notices disputing any presumed contract or agency relationship, including a letter of rescission and written demands for proof of authority and subject-matter jurisdiction." *Id.* ¶ 34. That Francisco did not broach the income calculations issue in the state court does not present a due process violation.[11] *Bell v. Twp of Concord*, 759 F. Supp. 2d 621, 627 (E.D. Pa. 2011) (quoting *Mathews*, 424 U.S. at 333 (finding that the "fundamental requirement" of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner")). Francisco fails to plausibly plead a procedural due process violation; rather, his allegations simply indicate his disagreement with the state

---

[11] The Court of Common Pleas referred to Francisco as "a prisoner with his own key," because he voluntarily chose not to testify at a hearing regarding the alleged inaccurate income calculations and factual errors. DRS Resp. Mot. for Prelim. Injunction, Ex. A at 8, ECF No. 23-1.

062926

court's result. This is insufficient to state a claim for a due process violation. *See Koynok v. Lloyd*, No. 06-1200, 2010 WL 883714, at *8 (W.D. Pa. Mar. 5, 2010) ("Simply because [the] plaintiff was unhappy with the result does not implicate a violation of his constitutional rights to procedural due process.").

Additionally, Francisco's First Amendment free exercise of religion claim against the County of Lancaster fails. To the extent that Francisco alleges that the child support proceedings violated the Free Exercise Clause, *see* Am. Compl. ¶ 99, he fails to allege how the proceedings were not neutral or generally applicable. *See Tenafly Eruv Ass'n, Inc.*, 309 F.3d at 165. Francisco cites numerous Bible passages to show his allegedly sincere religious practice and maintains that the bench warrant and child support proceedings burdened his ability to practice his faith. *See* Am. Compl. ¶¶ 98–101. For example, he asserts "that he must not become a slave to man-made systems of debt and peonage," "that he must support his family consistent in a manner consistent with biblical principles," and "that civil authorities should not employ unjust measures that oppress the poor or coerce labor." *Id.* ¶ 99. In return, the County points to *Ali v. Sponaugle*, No. 18-5655, 2019 WL 2295952, at *6 (E.D. Pa. May 30, 2019), a case decided by this Court which noted that California's child support laws were neutral and generally applicable and dismissed the plaintiff's free exercise claim.

Here, the Court will follow its earlier decision in *Ali*. Beyond Francisco alleging that he has a biblical right to raise his child, he does not allege any facts that the child support law infringes on his free exercise rights. Francisco merely argues that he could not live out his faith based upon his arrest for failing to appear at a hearing and by being forced to pay child support and cites biblical passages to support that theory. He does not identify any part of the Pennsylvania child support statutes or their enforcement in this case that are not neutral or

generally applicable that has burdened his religious practice. He also does not allege any "sincere religious practice" or described how the Pennsylvania child support laws burden that practice. *Robinson v. Pennsylvania*, No. 25-1644, 2025 WL 1558470, at *3 (E.D. Pa. June 2, 2025) (dismissing a free exercise claim for failing to plead that the Sex Offender Registration and Notification Act ("SORNA") was neither neutral nor generally applicable because the plaintiff only alleged "vaguely that the statute's requirements damage his conscience, require him to live a double life, and are contrary to Biblical teachings"). Therefore, Francisco's Amended Complaint does not state a plausible claim under the Free Exercise Clause.

Moreover, Francisco's claims for involuntary servitude under the Thirteenth Amendment and his Fourteenth Amendment claim based upon the DRS staff's *ultra vires* exercises of power are frivolous and the Court will not address them further.

Since Francisco fails to allege any constitutional violations against the County, any *Monell* claim against the County necessarily fails. *See Knellinger v. York St. Prop. Dev., LP,* 57 F. Supp. 3d 462, 471 (E.D. Pa. 2014) ("Importantly, without an underlying constitutional violation, there can be no *Monell* claim.") (citation omitted).

### D.    Amending Pleadings

"When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004). Here, any effort to amend the Complaint to state claims against the dismissed Defendants would be futile because Francisco's claims fail as a matter of law based on both immunity and *Younger* abstention. *See id.*; *see also Rufo v. Fox*, No. 21-3318, 2022 WL 16646689, at *3 (3d Cir. Nov. 3, 2022) (agreeing with the district court that the judges were

"immune from suit for both monetary damages and injunctive relief, and that amendment would be futile"); *Harper v. Dinella*, 589 F. App'x 67, 69 (3d Cir. 2015) (finding that an amendment would be futile because the claims failed as a matter of law). Francisco's stand-alone claim for declaratory and injunctive relief likewise fails as a matter of law. *See Chruby v. Kowaleski*, 534 F. App'x 156, 160 (3d Cir. 2013) ("[I]njunctive relief is a remedy rather than a cause of action[.]"); *Haque v. Swarthmore Coll.*, No. 15-1355, 2016 WL 11812329, at *16 (E.D. Pa. Feb. 3, 2016) ("A claim for injunctive relief pleads for a remedy, but does not constitute an independent cause of action.").  Accordingly, the Court denies Francisco leave to amend his claims against DRS, Kline, and Officer Johnson e based on immunity and the *Younger* abstention doctrine. Moreover, since there is no due process violation or First Amendment violation, and Francisco's other claims are frivolous, the Court also dismisses these claims against the County of Lancaster with prejudice.

## V.    CONCLUSION

For the foregoing reasons, the Court grants the Motion to Dismiss by DRS and Kline (official capacity), Kline's (individual capacity) Motion for Judgment on the Pleadings, Officer Johnson's Motion for Judgment on the Pleadings, and the County's Motion for Judgment on the Pleadings. The Court dismisses Francisco's claims for damages and declaratory and injunctive relief against DRS pursuant to Eleventh Amendment immunity. The Court also dismisses Francisco's claims for damages and retrospective declaratory and injunctive relief against Kline pursuant to Eleventh Amendment immunity and all claims against Kline pursuant to quasi-judicial immunity. The Court dismisses Francisco's claims against Officer Johnson as barred by qualified immunity. The Court also abstains from hearing Francisco's claims for prospective injunctive relief against Kline and Francisco's claims for injunctive and declaratory relief against

Officer Johnson and the County of Lancaster pursuant to *Younger*. The Court dismisses Francisco's claims against DRS, Kline, and Officer Johnson with prejudice because Francisco cannot plead his claims against them as a matter of law. Additionally, the Court dismisses Francisco's claims against the County of Lancaster since there is no due process violation. All claims and Defendants are dismissed with prejudice because an amendment would be futile. As a result of dismissing the entire action, the Court dismisses Francisco's Motions for a Preliminary Injunction as moot.

A separate Order follows.

BY THE COURT:

/s/ Joseph F. Leeson, Jr.
JOSEPH F. LEESON, JR.
United States District Judge

062926